## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## (WESTERN DIVISION)

**ASIA ROBINSON**                              **Case No.:**    1:21-cv-00706
**1100 Hanover Rd.**
**Apt F.**
**Cincinnati, Ohio 45240**

      **Plaintiff**

      **vs.**                                   **Judge:**


**VELOCITY ASSET MANAGEMENT, LLC**
**c/o Statutory Agent Corporation Service Company**
**50 West Broad St., Suite 1330**
**Columbus, Ohio 43215**


**JAVITCH, BLOCK LLC,**
**c/o Statutory Agent Brian Block**
**1100 Superior Ave., 19th Floor**          **COMPLAINT WITH**
**Cleveland, Ohio 44114**                    **JURY DEMAND**

      **and**

**BRIAN BLOCK, ESQ.**
**3420 Lanark Ln**
**Pepper Pike, Ohio 44124**

      **and**

**KRISTIN RADWANICK, ESQ.**
**9750 Brooks Bend Ct.**
**Centerville, Ohio 45458**

1

**WILLIAM MCCANN, ESQ.**
**3280 Belvoir Blvd**
**Beachwood, Ohio 44122**

       **and**

**ERIC S. PETERSON, ESQ.**
**37245 Fawn Path**
**Solon, Ohio 44139**

       **and**

**VIKTORIYA DYRDA, ESQ**
**7638 Andover Ln**
**North Royalton, Ohio 44133**

       **and**

**ANTHONY BARONE, ESQ**
**1000 Allendale Ave.**
**Akron, Ohio 44133**

       **and**

**MELISSA A. MORRIS,**
**530 Huntmere Rd.**
**Bay Village, Ohio 44140**

       **Defendants**

## I. INTRODUCTION

1.    This case is about false, misleading, deceptive, abusive, unfair and unconscionable debt collection. This Complaint demands damages for common tort law claims of defendants' abuse of process. Plaintiff's will hold her malicious prosecution claim in abeyance until the underlying litigation terminates in her favor.

2.    This Complaint also demands damages for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA) and the

2

Ohio Consumer Sales Practices Act OH ST § 1345.01 et seq. (hereinafter OCSPA). Both statutes prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

3.      Defendants' violations as alleged in this Complaint were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation. Alternatively, the Defendants' acts and omissions in violation of their statutory law and common law duties were so grossly negligent, uncaring and with such disregard of their duties as to constitute the legal equivalent of intent

## II. JURISDICTION AND VENUE

4.      Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

5.      Venue is proper before this Court pursuant to 28 U.S.C. §1391(b). The acts, omissions and transactions giving rise to Plaintiff's damages occurred in this district. Plaintiff resides in this district and Defendants transact business in this district.

## III. PARTIES

6.      Plaintiff Asia Robinson is an adult resident citizen of Cincinnati, Hamilton County, Ohio and a consumer as defined by the FDCPA, 15 U.S.C. §1692a(3).

7.      Defendant Velocity Investments, LLC is a is a foreign limited liability company which according to the Ohio Secretary of State's website registered to do business in Ohio under the name of Velocity Asset Management, LLC ("Velocity"). Velocity Asset Management, LLC is a corporate entity which at all relevant times was engaged, by use of mail and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5)

8.     Defendant Javitch, Block LLC, ("Javitch") is a law firm, a professional corporation registered to do business in Ohio with offices in Cincinnati, Akron and Cleveland.  The Cincinnati office is located at 700 Walnut St., Suite 302, Cincinnati, Ohio 45202.  Defendant Javitch Block, LLC is a corporate entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5).  Defendant Javitch Block, LLC is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

9.     Defendant Brian Block, Esq., ("Attorney(s)"), is a resident of the State of Ohio, a member of the Ohio Bar who conducts business in the State of Ohio and whose company has offices in Cincinnati, Ohio.  Defendant Block is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

10.     Defendant Kristin Radwanick, Esq., ("Attorney(s)"), is a resident of the State of Ohio and a member of the Ohio Bar who conducts business in the State of Ohio. Defendant Radwanick is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

11.     Defendant William McCann, Esq., ("Attorney(s)"), is a resident of the State of Ohio and a member of the Ohio Bar who conducts business in the State of Ohio. Defendant McCann is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

12.     Defendant Eric Peterson, Esq., ("Attorney(s)"), is a resident of the State of Ohio and a member of the Ohio Bar who conducts business in the State of Ohio.  Defendant

Peterson is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

13.     Defendant Viktoriya Dyrda, Esq., ("Attorney(s)"), is a resident of the State of Ohio and a member of the Ohio Bar who conducts business in the State of Ohio. Defendant Dyrda is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

14.     Defendant Anthony Barone, Esq., ("Attorney(s)"), is a resident of the State of Ohio and a member of the Ohio Bar who conducts business in the State of Ohio. Defendant Barone is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio.

15.     Defendant Morris, Esq., ("Attorney(s)"), is a resident of the State of Ohio and a member of the Ohio Bar who conducts business in the State of Ohio.  Defendant Morris is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and pursuant to the common law of Ohio

16.     Defendants use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts.

17.     At all material times the individual defendant attorneys' acts and omissions were within the scope of their employment or agency with their employer or principal Javitch and Block. At all material times the Defendant Javitch's acts and omissions were with the apparent authority of its principal Velocity and within the scope of its agency with its principal Defendant Velocity.

## IV.     OVERVIEW OF THE DEBT COLLECTION INDUSTRY

18.    This Complaint describes how Velocity and Defendant Javitch, its Defendant debt collector attorneys along with other well financed players (mostly lawyers and investors) in the debt collection industry, have harnessed technology to abuse the processes of our nation's courts. The Defendants and their industry players run a "collection mill", an automated assembly-line digital litigation system that overwhelms the court system with thousands of collection Complaints per day and overwhelms the citizenry with fake lawsuits dressed up as the real thing.

19.    The New York Times described the "collection mill" system in an editorial. To illustrate the abuses of the system, the op-ed showcased the debt collection glut in Kings County Court in Brooklyn. The editors penned the narrative as if they were describing Plaintiff Asia Robinson's case specifically:

> Each day in Civil Court in Brooklyn, Judge Noach Dear presides over as many as 100 credit card collection cases, a scene repeated day in and day out in courtrooms across the country. The borrowers typically do not show up to defend themselves. Many do not know they are being sued, others are too poor or too intimidated to fight back. The result, in an estimated 95 percent of the cases, is a default judgment in favor of the bank or other debt collectors.

> * **

> According to Judge Dear, in roughly 90 percent of credit card lawsuits the plaintiffs cannot even prove that a person owes the debt. Which is another way of saying that the courts are often being used as de facto debt- collection mills, allowing banks and others to seize money in violation of basic protections. The outcomes can be devastating. Once a default judgment is entered, wages can be garnished, bank accounts frozen or liens filed to collect the debt — whether or not the amount was actually owed or the process was fair. Judgments — which are generally enforceable for 20 years — also appear on credit reports, preventing people from obtaining mortgages, credit or even jobs. (New York Times editorial August 19, 2012, emphasis added).

20.    Plaintiff is a single mother, employed full time as an administrative clerk. She does not have the resources to fend off aggressive debt collectors, particularly when the

collectors misrepresent the character, nature and legal grounds of the claim. Defendant Velocity and its attorneys are well aware of the plight of Plaintiff Asia Robinson and consumers just like her who lack the ability to defend collection suits.

21.     Defendant Velocity's and Defendant Javitch and its attorneys' business models are built on the consumer's fear and paralysis when served with a collection summons. Defendant Velocity and Defendant Javitch and its attorney annually file collection suits by the thousands. The vast majority of such suits (upwards of 90% according to studies) result in default judgments that Defendant Velocity parlays into garnishments and property seizures. This predatory business model is well understood by scholars and government agencies. Yet the collectors flourish in the plain site of courts and regulators, treating the occasional fines and adverse verdicts as a minor cost of doing business.

22.     Numerous scholars have reported on the debt collection business model. The following quote accurately describes Defendants Velocity, Javitch, and the industry in general.

> The consumer debt collection industry is premised on a high-volume business model. Debt buyers holding portfolios of debts with a low ratio of book value to face value seek to collect on a sufficient number of debts to generate a profit, through direct collection efforts as well as lawsuits. Empirical evidence shows that many debt buyers using a high volume of lawsuits as a component of their recovery strategy rely heavily on the assumption that consumers often fail to show up to contest the case; this assumption is largely valid. There may be several reasons for such a failure to respond. Some of these reasons may themselves be related to FDCPA violations, including defective notice, or may stem from a (mistaken) consumer belief that no response is required if the debt being sued upon is not actually hers. Most simply, many consumers may not respond due to a misunderstanding of the legal procedures required to avoid default. In addition, some debt collectors rely on the assumption of default to pursue what has been called a "scattershot" approach, whereby they file many lawsuits with the hope of securing default judgments, but without the intent to actually litigate them should the opposing parties respond. Improving Relief From Abusive Debt Collection Practices 127 Harv. L. Rev. 1447, 1449.

## V.     Robo-Lawyers Running a Digital Assembly Line Machine

23.     Attorneys enjoy a nearly absolute privilege in advocating for their clients' rights and protections. Attorneys should be free to exert their clients' cause far beyond the blurry lines bounding the gray zone of novelty and sometimes even absurdity. Attorneys should be free to be wrong in good faith on their clients' behalf.  But attorneys are not free to abuse the court system and the citizenry.  Attorneys have the power to disrupt and destroy human happiness and tranquility. With that great power comes great responsibility.

24.     The debt collection lawyers in this case have stepped way over the line of advocacy. Lawyering should be a studious calling, a profession marked by careful and methodical research of the facts and law. This Complaint describes how Defendant Javitch attorneys have adopted a high-volume/low-quality scatter-shot business model that has abused the processes of this court causing financial and emotional harm to Plaintiff Asia Robinson. The Defendant attorneys working for Defendant Javitch have morphed the practice of law into a rapacious business, an organization hardly recognizable as a law firm. To enjoy the ancient protection that the common law affords to advocates, one should behave as an advocate. A collection agency posing as a law firm is not deserving of traditional immunities.

## VI.    THE HAMILTON COUNTY COLLECTION SUIT

25.     Plaintiff has never had a business relationship with Defendant Velocity and had never heard of the company until Defendant Velocity's attorney Defendant Radwanick, wrote her a demand letter on October 12, 2020. The letter arrived by U. S. Postal Service.

8

The letter falsely stated that Plaintiff Asia Robinson owed $15,908.55 to Defendant
Velocity.

26.     On November 20, 2020 Defendant Velocity and Defendant attorneys filed a
collection suit against Plaintiff in the Court of Common Pleas Hamilton County, Ohio.
(Velocity Investments, LLC v Asia Robinson; No. A 2004097). (A true copy of that
Complaint is attached as Exhibit 1).  Because she was financially unable to retain an
attorney to represent her, Plaintiff Robinson found a website that assisted her in filing a
generic Answer to the Complaint. She filed the Answer *pro se,* and along with the answer
Plaintiff Robinson filed a Request for Documents that asked for proof that she owed the
debt. The website eventually found attorneys to represent Plaintiff Robinson. Her
attorneys repeated Plaintiff Robinson's request to Defendant Velocity and Defendant
attorneys for documentation of the alleged debt but the Defendants have not produced a
contract and have not produced proof that Defendant Velocity owns the non-existent
debt.

27.     A collection suit is a breach of contract case. A breach of contract case requires a
contract. But there is no contract. Defendant Velocity, Defendant Javitch and Defendant
Attorneys attached a hodge-podge of documents to the Hamilton County Complaint as
Exhibit A, but the Exhibit contained no contract. One of the attachments was a Bill of
Sale, but it does not reference Plaintiff Asia Robinson, points to no specific account
number and identifies the investors referenced in the data file with the cryptic label "L-
19-1000_LendingClub_FinalData_V2_xlsx". The anonymous investors purported to
convey the accounts on Exhibit 1 to Defendant Velocity. But there is no Exhibit 1
attached to the Bill of Sale or Complaint**,** so there is no way one can determine what

9

accounts are sold and who is doing the selling. There is likewise no way one may discern how the "investors" on the data file came to own the debt, if in fact they ever did. There is no original account level information included in any of the exhibits to the Complaint. The Hamilton County collection suit is a fake lawsuit with fake Exhibits.

28.     Plaintiff Asia Robinson has filed a Motion for Summary Judgment in the Hamilton County litigation. Defendant Velocity responded by filing a competing motion for Summary Judgment. Defendant Velocity and its lawyers argued in their moving papers before the Hamilton County Court that Defendant Velocity is entitled to Summary Judgment in a breach of contract case with no contract. It is the defendants' business model to routinely file frivolous unsupported pleadings in debt collection litigation. The Hamilton County court has not yet ruled on the Motions because the court's docket and scheduling has been adversely impacted by the still raging Covid-19 pandemic.

29.     When Plaintiff Asia Robinson pressed Velocity via her Motion for Summary Judgment to prove up the contract Defendant Velocity conjured the Affidavit of Alia Shaalam. (A true copy of the Affidavit of Alia Shaalam is attached as Exhibit 2). This Affidavit expended many words but demonstrated no personal knowledge of a promissory note, did not produce a contract and did not explain the contract's non-existence. The Affidavit does not explain how Defendant Velocity owns the alleged debt. This is typical of the debt collection industry. "Some debt collection agencies support mass litigation by engaging in "robo-signing," a practice by which debt collectors generate large numbers of affidavits swearing to personal knowledge of the details of the debt underlying a lawsuit, where no such personal knowledge exists." *Supra* at 1450.

30.     In the Hamilton County litigation Defendant Velocity filed its Response to

Plaintiff's Summary Judgment Motion by attaching the same motley set of papers,

Exhibit A, that it had submitted with the Complaint. Exhibit A is a fake Exhibit, bearing

an officious stamp in oversized font: "COPY OF AUTHORATATIVE DOCUMENT".

This legend is false in every conceivable context or interpretation.  None of these

documents are a contract, promissory note or evidence of any agreement of any person to

pay any money to anyone. The documents, purporting to be a Truth in Lending

Disclosure, are mostly blank forms. Yet the Defendants falsely stamped them as

"AUTHORATATIVE", even though no witness can authenticate them.

31.     In determining whether a debt collection communication is false, misleading or

deceptive courts apply the "least sophisticated consumer" test. Trained jurists and

attorneys would understand immediately that there is nothing "authoritative" about a

blank TILD form. But to the layman such a pretentious label as "AUTHORATATIVE"

falsely bears the indicia of legitimacy

## VII.    THE DEFENDANT'S INTENTIONAL VIOLATION OF STATUTORY AND COMMON LAW DUTIES

32.     As experienced litigators and debt collectors Defendant Velocity and Defendant

Javitch and its Defendant attorneys had actual knowledge of the following:

## A.    The Elements of a Breach of Contract Case Were Absent

33.     A litigant must present evidence on several elements to successfully prosecute a

breach of contract claim. Those elements include the existence of a contract, performance

by the plaintiff, consideration, meeting of the minds, breach by the defendant, and

damage or loss to the plaintiff. See 2 Ohio Jury Instructions (1993), Section 253.01, at

111–112. See, also, *601 *Am. Sales, Inc. v. Boffo* (1991), 71 Ohio App.3d 168, 175, 593

N.E.2d 316, 321 (elements required for effective pleading of breach of contract action).

*Doner v. Snapp*, 649 N.E.2d 42, 44, 98 Ohio App.3d 597, 600–01 (Ohio App. 2 Dist.,1994). But Defendant Velocity filed a breach of contract case with no contract.

**B.     Velocity Has No Legal Standing To Sue**

34.     Not only is there no contract in the record, there is no evidence of the chain of assignment that shows that Defendant Velocity has any interest whatsoever in the so-called original debt. In support of its Motion for Summary Judgment in the Hamilton County case Velocity attached only the Affidavit of Alia Shaalan. This Affidavit does not establish a chain of custody or demonstrate in any respect that Defendant Velocity has an unbroken chain of title or chain of assignment to the imagined contract. The Affidavit is replete with elaborate verbose gibberish that even liberally translated does not establish that a contract exists or that a chain of assignment affords to Defendant Velocity a property interest in the metaphysical non-existent contract.

35.     To establish traditional standing, a party must show that the party has "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These three factors—injury, causation, and redressability—constitute 'the irreducible constitutional minimum of standing". Moore at ¶ 22, quoting Lujan at 560, 112 S.Ct. 2130. Defendant Velocity's so-called proof does not meet this standard because it was unable to show any contractual relationship with Plaintiff Asia Robinson. Defendant Velocity's Exhibit A Documents and Affidavit of Aria Shaalam Are Inadmissible.

**C.      The Documents Lack Proper Evidentiary Foundation**.

36.      Although Defendant Velocity's Summary Judgment Motion has attached an

Affidavit of Alia Shaalan, the Affidavit does not authenticate or verify any connection of

the Exhibit A documents with the Hamilton County lawsuit. The Exhibit A documents

have no proponent to verify their authenticity. Exhibit A is not relevant to the Hamilton

County case because they have no probative value to any issue before the Hamilton

County court.

**D.      There Is No Witness Or Proponent For The Exhibit A Documents**.

37.      Even if there were a witness to authenticate the Exhibit A documents (and there is

not), Exhibit A does not contain a written contract, a signed agreement, or any other

paper or writing indicating that Plaintiff Asia Robinson owes any amount of money to

anybody.

**E.      The Affidavit Of Alia Shaalam Is Not Based Upon Personal Knowledge**.

38.      The affiant Shaalam expends many words saying little. What is needed is a plain

English statement that the witness has reasonable grounds, based on personal knowledge,

that an attached contract document is a true and correct copy of the original, maintained

in the regular course of business. Those magic words are missing. The affidavit contains

no statement about any written contract that tends to prove any person's indebtedness to

Velocity or to anyone else.

**F.      The Affidavit Of Alia Shaalam Is Perjured**.

39.      The affiant falsely states that "Assignee's business records indicate that Assignee

purchased the Contract of Asia Robinson…". The affiant Shaalam also swore:

"Obligore's Contract shows a balance of $15,908.55". But there is no Contract. This testimony is an affirmative misrepresentation.

**G.** **The Affidavit Of Alia Shalaam Does Not Comply With Ohio Law**.

40. See OH ST § 1319.12. Ohio statute requires that debt buyers such as Defendant Velocity comply with the prohibition that "No collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness unless it has taken the assignment in accordance with all of the following requirements: …(4) Upon the effective date of the assignment to the collection agency, the creditor's account maintained by the collection agency in connection with the assigned account, bill, or other evidence of indebtedness was canceled." Defendant Velocity has secured no such cancellation and presented none in the Hamilton County case.

**H.** **ORC Rule 10 Requires A Written Contract To Be Attached To The Complaint**.

41. ORC Rule 10 states: "When any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading. (emphasis added). Defendant Velocity has produced no such written instrument.

**I.** **The Hamilton County Complaint is Frivolous, Groundless and Without Probable Cause**

42. There are four main elements of a breach of contract claim: (a) the existence of a contract; (b) performance by the plaintiff; (c) breach by the defendant; and (d) damage or loss to the plaintiff. *Doner v. Snapp*, 98 Ohio App.3d 597, 649 N.E.2d 42, 44 (1994); *Thomas v. Publishers Clearing House, Inc*., 2002 WL 193935, at 2 (C.A.6 Ohio 2002).

All the required elements are missing from Defendant Velocity's case because there is no

contract in the record and Defendant Velocity cannot show that it owns the debt.

**J.      The Collection Attorneys Operate a High-Volume Automated Entrepreneurial Business Model.**

43.      Defendant Velocity and Defendant Attorneys are part of a multi-billion dollar

consumer debt collection industry. The financial success of the collection attorneys'

enterprise depends upon extremely high-volume caseload per attorney. Whereas the

typical case volume per attorney in a conventional litigation practice may include a few

dozen active files, a debt collection law firm will manage a caseload of thousands of

active files per attorney. Upon information and belief, discovery will reveal that

Defendant Javitch and Block firm is handling such a large array of open files in various

stages of maturity that the average case load per attorney numbers in the thousands.

Defendant Javitch and Block firm files thousands of debt collection complaints in a

multi-state region per year. The attorneys achieve this ultra-high volume through

automation, a system wherein every step in the litigation process is digitized and reduced

to an assembly line process. Further, much of the management load that requires the

thoughtful attention of a trained advocate is necessarily handed off to non-attorney staff.

44.      The Defendants' ultra- high-volume litigation machine also depends upon a high

frequency of default judgments. The debt collector attorneys have no intention of actually

litigating the collection cases they file. The vast majority of consumers are

unsophisticated in the law and do not have the means or acumen to recruit an attorney to

defend a debt collection case.

45.      The ultra-accelerated pace of a collection law practice explains how collection

counsel can omit the plain and simple requirement of proof of the existence of a contract

in a breach of contract case. To get at then law on breach of contract in Ohio an attorney would not even need to consult an online legal research library like Westlaw. A simple Google search would reveal Ohio law on the subject. But first one must engage in the careful and methodical workmanship that lawyers have practiced for centuries. In adopting a high-volume entrepreneurial business model the Defendant Attorney collectors assured the inevitable abusive result described in this Complaint.

46.     Even after the Defendant Attorneys knew for certain that Plaintiff Asia Robinson had a lawyer looking for proof of a contract and proof that Defendant Velocity owned the debt, Defendant Attorneys remained on autopilot and brought to bear no thoughtful examination or analysis of the litigation. They doubled down and filed a frivolous Motion for Summary Judgment supported by a perjured Affidavit. Even after the intervention of a human being attorney on Plaintiff Asia Robinson's behalf into the automated process, Defendant Attorneys responded in a robotic manner, true to the demands of innards of the machine of their own making. They filed a one-size-fits-all robo-signed perjured affidavit.

### K.     Malicious Prosecution And Abuse Of Process

47.     Plaintiff notifies this court and the defendants of her malicious prosecution claim provisionally since the Hamilton County Court of Common Pleas has not yet ruled on the competing Summary Judgment Motions. When the Hamilton County court terminates the action in Plaintiff's favor she will move this court for leave to Amend her Complaint to include a malicious prosecution count.

48.     Abuse of process and malicious prosecution are similar but overlapping torts, with many features in common and several distinct features. The Fifth Circuit has used a

colorful phrase to describe the general boundaries of both civil wrongs: one may not "...resort to judicial process as a club or form of extortion...". *Dunn v. Koehring Co.*, 546 F.2d 1193, 1199 (C.A.Miss. 1977).

49.     The facts of this case overlap both torts. Ohio state courts have described how the elements of the related torts may overlap thusly:

> If process is issued illegitimately or unjustifiably but is properly used within the limits of that initial writ, an element of a claim for malicious prosecution is established but not an element of a claim for abuse of process, as the use to which the writ was put is the purpose for which that process was intended. On the other hand, if the initial process is unjustified and that process is later used in an improper fashion, an element of both malicious prosecution and abuse of process has been established. *Donohoe v. Burd*, 722 F.Supp. 1507, 1518 (S.D.Ohio,1989).

50.     A claim for abuse of process may also arise when a defendant misuses any process which was illegitimately issued. Abuse of process occurs when one perverts the original process for some purpose outside the scope of its legal limits. Thus, malicious prosecution lies when one has malice in initiating a suit and malice is present before process issues; abuse of process lies when one misuses the process and injects malice after the process issues. *Donohoe v. Burd*, 722 F.Supp. 1507, 1518 (S.D.Ohio,1989).

51.     This Complaint describes the elements of both torts under Ohio jurisprudence. The Defendants initiated the Hamilton County collection suit without probable cause. Gaping holes in the elementary requirements of a breach of contract case were prominent. For example, there is no contract and there is no proof that Defendant Velocity owns the debt. The collection suit had a chance of success only if, as in 90% of the cases, Plaintiff Robinson had failed to respond. Even when challenged Defendant Velocity regurgitated the same hodge-podge of papers originally attached to the collection Complaint plus a perjured affidavit.

52. A malicious prosecution is the filing of either a criminal or civil proceeding against another without probable cause and with malice. To establish the tort of malicious prosecution, a Plaintiff must prove the following elements: 1) the malicious institution of a prior proceeding against the Plaintiff by the Defendant; 2) the lack of probable cause for the filing of that prior suit; 3) the termination of that prior proceeding in the Plaintiff's favor; and 4) injury or damages suffered by Plaintiff as a result. *Crawford v. Euclid National Bank*, 19 Ohio St.3d 135, 483 N.E.2d 1168 (1985).

53. Arrest of the Plaintiff or seizure of his property is no longer a necessary element in proof of malicious prosecution cases. See *Trussell v. General Motors Corp*., 559 N.E.2d 732, 733 (Ohio,1990).

54. As to the "malicious" element of malicious prosecution, the Ohio Supreme Court has held: In actions for malicious prosecution, while malice is an essential element, the want of probable cause is the real gist of the action. If want of probable cause be proven, the legal inference may be drawn that the proceedings were actuated by malice. *Melanowski,* 102 Ohio St. at 155, 131 N.E. 360; see also *Skarbinski v. Henry H. Krause Co*., 378 F.2d 656 (6th Cir.1967).

55. The Defendants are operating a digitized automated collection business in the halls of justice, as money changers in the temple. The Defendants have abused the processes of this court for improper and ulterior to the proper use of the court's powers. In this case, as in thousands of others, the defendants set into motion the civil processes of Ohio courts to collect uncollectible debts. No probable cause existed to support the filing of the collection suit.

56.     The Defendant Attorneys' high-speed-low-quality-control business model inevitably leads to human suffering. This is not a case of an isolated error or a momentary lack of attention. Defendant Attorneys' system worked exactly as they designed it to function. Plaintiff Asia Robinson, and millions of consumers like her, are merely collateral damage in service of the collection machine.

## VIII. DAMAGES

### CAUSE OF ACTION ONE: OHIO CONSUMER SALES PRACTICES ACT OH ST § 1345.01 ET SEQ.

57.     Plaintiff realleges all the foregoing paragraphs as if fully rewritten herein.

58.     The Defendants acts and omissions alleged constitute unfair, deceptive and unconscionable acts and omissions under the Ohio Consumer Sales Practices Act. In reference to Defendant Javitch Block law firm in the case at hand this court has held that the OCSPA applies to debt collection activities where the debt arises out of a transaction with a financial institution but is later sold to another entity that is not a financial institution. See *Williams v. Javitch, Block & Rathbone, LLP*, 480 F.Supp.2d 1016, 1024 (S.D. Ohio 2007).

59.     Defendants have caused Plaintiff Robinson to suffer emotionally and physically. Plaintiff Asia Robinson has lost sleep, suffered loss of appetite, anxiety and depression for worry that she could be forced to pay Defendants for a debt she never owed.

60.     Plaintiff has been damaged in an amount to be determined but exceeding $100,000.00 plus costs and attorney fees.

### CAUSE OF ACTION TWO: FAIR DEBT COLLECTION PRACTICES ACT

61.     Plaintiff realleges paragraphs 1-60 as if fully rewritten herein.

62. Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

(a) The Defendants violated 15 U.S.C.A. § 1692e by using false, deceptive and misleading means in connection with the collection of an alleged debt. It is false, misleading and deceptive to utilize the court systems of our nation to attempt to collect an uncollectible debt in furtherance of a business model that rests on the assumption that 90% of consumers will suffer a default judgment for failure to answer the collection complaint.

(b) The Defendants violated 15 U.S.C.A. § 1692e(2)(A) by falsely representing the character and legal status of an alleged debt. It is a false representation of the character and legal status of an alleged debt to utilize the court system to attempt to collect an uncollectible debt by filing inadmissible perjured hearsay affidavits, containing hearsay within hearsay, in furtherance of a business model that rests on the assumption that 90% of consumers will suffer a default judgment for failure to answer the collection complaint.

(c) The Defendants violated 15 U.S.C.A. § 1692e(10) by using false representations and deceptive means to attempt to collect a debt. It is a false representation of the character and legal status of an alleged debt to utilize the court systems of this nation to attempt to collect an uncollectible debt in furtherance of a business model that rests on the assumption that 90% of consumers will suffer a default judgment for failure to answer the collection complaint. It is a false representation of the character and legal status of an alleged debt to utilize the court systems to attempt to collect an uncollectible debt by filing inadmissible perjured hearsay affidavits, containing

hearsay within hearsay, in furtherance of a business model that rests on the assumption that 90% of consumers will suffer a default judgment for failure to answer the collection complaint.

63.     Defendants have caused Plaintiff Robinson to suffer emotionally and physically. Plaintiff Asia Robinson has lost sleep, suffered loss of appetite, anxiety and depression for worry that she could be forced to pay Defendants for a debt she never owed.

64.     Plaintiff has been damaged in an amount to be determined but exceeding $100,000.00 plus costs and attorney fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, having fully pleaded her cause, hereby prays that this Honorable Court aware Plaintiff an amount to be determine exceeding $100,000.00 in compensatory damages, her costs and attorney fees, and an amount in punitive damages sufficient to deter the meretricious conduct of Defendants in the future; Statutory and actual damages against the Defendants pursuant to 15 U.S.C.A. § 1692k in an amount to be determined at the time of trial; Costs and reasonable attorney's fees against the Defendants pursuant to 15 U.S.C.A. § 1692k; Treble damages as allowed by R.C. § 1345.09(B);  and all such other relief as this Court or a jury may direct.

Respectfully submitted,

/s/Robert F. Croskery
Robert F. Croskery (0064802)
Attorney for Plaintiff
Croskery Law Offices
3905 Eastern Avenue, Suite 200
Cincinnati, OH  45226
(513)232-5297
Fax (513)426-7372
rcroskery@croskerylaw.com

## **JURY DEMAND**

Plaintiff Asia Robinson hereby demands trial by a jury to all issues triable to a jury.

/s/Robert F. Croskery
Robert F. Croskery